UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AKEEM OLIVER,<br><br>                              Plaintiffs,<br><br>            - against -<br><br>CITY OF NEW YORK, et al.,<br><br>                              Defendants. | **ORDER**<br><br>19 Civ. 11219 (PGG) (JLC) |

PAUL G. GARDEPHE, U.S.D.J.:

In this action, Plaintiff Akeem Oliver – a New York City public school teacher – raises Section 1983 and discrimination claims against the City of New York (the "City"), the New York City Department of Education ("DOE") and certain of its employees, and officers of the New York City Police Department (the "NYPD").  (Second Am. Cmplt. ("SAC") (Dkt. No. 41))  Plaintiff's claims relate to alleged discrimination he suffered at Tompkins Square Middle School (the "School") and to his March 22, 2019 arrest.

The SAC was filed on August 13, 2020.  (SAC (Dkt. No. 41))  On February 4, 2021, Defendants moved to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Mot. (Dkt. No. 63))  This Court referred Defendants' motion to the assigned magistrate for a Report and Recommendation ("R&R").  (Dkt. No. 71)  On February 15, 2022, Magistrate Judge James L. Cott issued a thorough 80-page R&R, recommending that Defendants' motion be granted in part and denied in part.  (R&R (Dkt. No. 97))

For the reasons stated below, the R&R will be adopted in part, and Defendants' motion to dismiss will be granted in part and denied in part.

# BACKGROUND[1]

The R&R sets out the factual background of this case in detail.  (R&R (Dkt. No. 97) at 5-17)[2]  The SAC's factual allegations are briefly summarized below.

## I.    THE PARTIES

Oliver is a Black, male, special needs teacher at the School, where he began teaching in 2011.  (SAC (Dkt. No. 41) ¶¶ 1, 44-45).

The SAC asserts claims against fifteen defendants.  The R&R addresses the first set of defendants as the "NYPD Defendants," and the second set of defendants as the "DOE Defendants."  The NYPD Defendants are

- Dermot F. Shea, Commissioner of the NYPD (in his official capacity);

- John L. O'Connell, Commanding Officer of the NYPD's Ninth Precinct (in his official capacity);

- Josep Gonzalez, an NYPD sergeant (in his personal and official capacities);

- Kenneth J. Taylor, an NYPD officer (in his personal and official capacities); and

- five unidentified NYPD Officers (in their personal and official capacities) (the "Unidentified NYPD Officers").

The DOE Defendants are

- the DOE;

---

[1]  Because the parties have not objected to Judge Cott's factual statement, this Court adopts it in full.  See Silverman v. 3D Total Solutions, Inc., No. 18 CIV. 10231 (AT), 2020 WL 1285049, at *1 n.1 (S.D.N.Y. Mar. 18, 2020) ("Because the parties have not objected to the R&R's characterization of the background facts . . . , the Court adopts the R&R's 'Background' section and takes the facts characterized therein as true."); Hafford v. Aetna Life Ins. Co., No. 16-CV-4425 (VEC)(SN), 2017 WL 4083580, at *1 (S.D.N.Y. Sept. 13, 2017) ("The parties do not object to the Magistrate Judge's . . . recitation of the facts of this case, and the Court adopts [the factual statement] in full.").

[2]  The page numbers of documents referenced in this Order correspond to the page numbers designated by this District's Electronic Case Files ("ECF") system.

- the School;

- Carry Chan, Superintendent of School District 1 (in her official capacity);

- Kristine Mustillo, Deputy Community Superintendent of School District 1 (in her personal and official capacities); and

- Sonhando Estwick, the School's principal (in his personal and official capacities).

The fifteenth Defendant is the City.

(SAC (Dkt. No. 41) ¶¶ 33-43)

## II.   **THE FACTS**

### A.   **Pre-Arrest Events**

The SAC alleges that Oliver experienced racist remarks and unfounded attacks on his reputation at the School.  Among other things, Oliver complains that (1) Defendant Estwick told Oliver at a staff meeting that the School "had no plans to do anything in recognition of Black History Month," and referred to Oliver an "'affirmative action hire'" whose "'radical views were not welcome at the [S]chool'"; (2) Estwick and DOE spread rumors that Oliver "harbored 'predatory' intentions toward . . . students," and issued unsupported disciplinary letters that were placed in Oliver's personnel file; and (3) Estwick prevented Oliver from serving as a coach for after-school activities.  (Id. ¶¶ 50-58 (quoting Defendants' alleged remarks))

In 2017, a School guidance counselor and a teacher spread a rumor that Oliver had an inappropriate relationship with a student, T.S.  Estwick "refused to correct" the unfounded rumor.  (Id. ¶¶ 59-64)  This rumor led to an investigation, during which Oliver was reassigned to the "Rubber Room, . . . a room where teachers under investigation due to allegations of wrongdoing – regardless of whether these allegations are substantiated – must report and simply sit and idle away the hours."  (Id. ¶¶ 3, 65-67)

3

### B. Oliver's Prior Claims Against Estwick and the DOE

Oliver has brought multiple legal proceedings against Estwick and the DOE.  In 2014, he brought an arbitration claim "against Defendant Estwick, alleging a pattern of discrimination and harassment and seeking to change his negative teaching evaluation." According to Oliver, he prevailed in the arbitration.  That same year, he filed a complaint with the DOE's Office of Equal Opportunity "against Defendant Estwick for racial discrimination in the workplace."  The Office of Equal Opportunity conducted an investigation but closed the case in April 2018 without taking any action against Estwick.  (Id. ¶¶ 53-55)

Following his 2017 assignment to the Rubber Room, Oliver filed a complaint with the Equal Employment Opportunity Commission (the "EEOC") and a lawsuit, which named the DOE and Estwick, among others.  (Id. ¶ 69)  The lawsuit was settled on December 27, 2018. (Id.)

### C. The March 22, 2019 Arrest

On March 21, 2019, G.C. – a female student at the School – reported that Oliver had "caressed" her arm and "said something to G.C. along the lines of 'I know you love me, or you know you love me,' which purportedly made her uncomfortable" (the "Alleged Incident"). (Id. ¶ 73)  Without speaking with Oliver, Estwick and other DOE employees "immediately [reported] the Alleged Incident to G.C.'s parents and/or the NYPD, encouraging G.C. and her parents to report the Alleged Incident to the NYPD, and/or . . . encouraging the NYPD to arrest [Oliver] without first undertaking any investigation of the Alleged Incident."  (Id. ¶ 76)

On March 22, 2019, Superintendent Chan, Estwick, "other [School] staff, and one of G.C.'s parents met at [the School]."  (Id. ¶ 78)  After that meeting, "[w]ithout investigating the incident, and without any evidence that Mr. Oliver posed any immediate threat, the NYPD, with Defendants DOE, Chan and Estwick's encouragement, decided to arrest Mr. Oliver."  (Id.)

Estwick entered Oliver's classroom, told Oliver that Superintendent Chan wanted to see him, and

led Oliver to the School's entrance, where six NYPD officers arrested him.  (Id. ¶ 79)  Oliver

was handcuffed and led on a "perp walk" through a "large group of parents, [School] staff, and

students" to a police vehicle.  Once inside the car, Oliver was told that he was being charged

with "'endangering a child.'"  (Id. ¶¶ 80-84 (quoting police officer's alleged remark))  Oliver

was brought to the Ninth Precinct and detained in a cell for three and a half hours.  The arrest

report, which NYPD Officer Taylor allegedly authored, indicates that NYPD Sergeant Gonzalez

approved Oliver's arrest for violating New York Penal Law Section 260.10 (Endangering the

Welfare of a Child) based on G.C.'s allegation.  (Id. ¶¶ 89, 92)

Oliver was released later that day.  One of the arresting officers told Oliver that

(1) the NYPD had investigated G.C.'s allegation by interviewing two student-witnesses, neither

of whom corroborated G.C.'s allegation; and (2) the arrest was "'unusual'" in comparison to how

the NYPD "'typically'" deals with similar allegations.  (Id. ¶¶ 97-98 (quoting officer's alleged

remark))

D.    **Post-Arrest Events**

After Oliver was released, Estwick gave him a DOE letter stating that he had been

reassigned to the Rubber Room pending an investigation by the New York City Special

Commissioner of Investigation.  (Id. ¶¶ 108-10)  As a result of the Rubber Room assignment,

Oliver lost income and lost opportunities to apply for additional responsibilities or a transfer to

another school.  (Id. ¶¶ 109, 115-16)  Estwick also emailed parents of School students stating

that Oliver "'ha[d] been reassigned away from the school pending the results of an

investigation.'"  Oliver contends that Estwick's email to parents was "not common," was

"unnecessary," and effectively "broadcast" that he had been sent to the Rubber Room.  (Id. ¶

112-13 (quoting the alleged email))

On June 10, 2019, Oliver returned to his teaching duties at the School.  Estwick apologized to Oliver for the arrest and said that – in "'turning [Oliver] over' to the police on March 22" – he "'felt like [he] was walking [Oliver] to [his] death sentence.'"  (Id. ¶¶ 119 (quoting Estwick's alleged remark))

On June 11, 2019, Deputy Superintendent Mustillo gave Oliver a copy of an investigation report containing students' anonymous allegations against him.  Oliver alleges that District 1 – the school district in which Mustillo serves as a deputy superintendent, and which contains the School – conducted the investigation, after a referral from the DOE's Office of Equal Opportunity.  (Id. ¶¶ 122, 125)  Oliver denied the students' allegations, but in a disciplinary letter Mustillo informed Oliver that she rejected his account and had "adopt[ed]" the students' allegations.  (Id. ¶¶ 127-31)

### E.   **Disparate Treatment**

Oliver alleges that the DOE Defendants treated him – a Black man accused of improper behavior toward a student – much worse than similarly situated White teachers.  According to Oliver, three White male teachers accused of similar or more serious misconduct – including a teacher whom G.C. had accused of misconduct – suffered no consequences.  Two of these teachers were not investigated or disciplined in any fashion, while the third was investigated but not sent to the Rubber Room or otherwise disciplined.  (Id. ¶¶ 134-45)

### F.   *Monell* **Allegations Against the NYPD**

Oliver alleges that "[t]he NYPD's unlawful and 'unusual' arrest of [him] is consistent with – and the result of – the NYPD's long history of profiling, harassing, and abusing people of color, in particular Black males.  Upon information and belief, Defendant City is aware of the NYPD's long history of profiling and abuse of Black males, which it has condoned and supported for years."  (Id. ¶ 100 (quoting alleged remark by arresting officer))  Citing Floyd v.

City of New York, 959 F. Supp. 2d 540 (S.D.N.Y. 2013), Oliver asserts that "the NYPD had a 'policy of indirect racial profiling' in its application of 'stop-and-frisk.'" (Id. ¶ 101 (quoting Floyd, 959 F. Supp. at 660) (emphasis in Floyd))  Citing various media reports and a 2019 report from the New York City Department of Investigation, Office of the Inspector General, Oliver contends that, even after Floyd, "the NYPD still disproportionately arrested people of color, in particular Blacks"; that "[p]eople of color, in particular Blacks, also disproportionately are arrested by the NYPD for minor offenses"; and that from 2014 to 2018, "the NYPD regularly received complaints of bias-based policing." (Id. ¶¶ 102-04)  In sum, Oliver alleges that "Defendants City, Shea, and O'Connell knew or should have known of the above-described widespread practice within the NYPD of bias-based policing but nonetheless failed to take any corrective action to change this activity." (Id. ¶ 105)

## G.    Notice of Claim and Right to Sue

Oliver alleges that "[o]n June 14, 2019, [he] served a Notice of Claim upon the New York City Comptroller and DOE, giving notice of his intentions to pursue the claims alleged in [this action]." (Id. ¶ 29)  Oliver further states that he "filed a charge of discrimination with the EEOC alleging violations of Title VII," and on May 11, 2020, "received his Notice of Right to Sue from the EEOC." (Id. ¶ 31)

## III.   PROCEDURAL HISTORY

The Complaint was filed on December 6, 2019, and the First Amended Complaint was filed on June 4, 2020. (Dkt. Nos. 1, 33)  The SAC was filed on August 13, 2020, and asserts twenty-two causes of action:

1. Section 1983 false arrest claim against Shea, O'Connell, Gonzalez, Taylor, and the five Unidentified NYPD Officers;

2. state law false arrest claim against Shea, O'Connell, Gonzalez, Taylor, and the five Unidentified NYPD Officers;

7

3. <u>Monell</u> claim against the City of New York based on the actions of NYPD personnel;

4. Section 1983 supervisory liability claim against Shea, O'Connell, and Gonzalez;

5. equal protection claim under the New York State Constitution against Shea, O'Connell, Gonzalez, Taylor, and the five Unidentified NYPD Officers;

6. unreasonable search, seizure, and interception claim under the New York State Constitution against Shea, O'Connell, Gonzalez, Taylor, and the five Unidentified NYPD Officers;

7. <u>respondeat superior</u> liability against the City of New York;

8. Title VII race discrimination claim against the DOE;

9. Title VII hostile work environment claim against the DOE;

10. Title VII retaliation claim against the DOE;

11. Section 1983 race discrimination claim against the School, Chan, Mustillo, and Estwick;

12. Section 1983 hostile work environment claim against the School, Chan, Mustillo, and Estwick;

13. Section 1983 retaliation claim against the School, Chan, Mustillo, and Estwick;

14. <u>Monell</u> claim against the DOE for failure to supervise and discipline Estwick;

15. supervisory liability claim against Chan and Mustillo;

16. race discrimination claim under the New York State Human Rights Law (the "NYSHRL") against the DOE, the School, Chan, Mustillo, and Estwick;

17. NYSHRL hostile work environment claim against the DOE, the School, Chan, Mustillo, and Estwick;

18. NYSHRL retaliation claim against the DOE, the School, Chan, Mustillo, and Estwick;

19. race discrimination under the New York City Human Rights Law (the "NYCHRL") against the DOE, the School, Chan, Mustillo, and Estwick;

20. NYCHRL hostile work environment claim against the DOE, the School, Chan, Mustillo, and Estwick;

21. NYCHRL retaliation claim against the DOE, the School, Chan, Mustillo, and Estwick; and

22. respondeat superior liability claim against the DOE.

(SAC (Dkt. No. 41) ¶¶ 160-276). Oliver seeks declaratory and injunctive relief, damages of "no less than" $10 million, and an award of attorneys' fees and costs. (Id. at pp. 61-62)

On November 11, 2020, Defendants moved to dismiss the SAC in its entirety. (Dkt. No. 63) Plaintiff filed an opposition on December 23, 2020, and Defendants filed a reply on February 4, 2021. (Dkt. Nos. 64-65)

Judge Cott issued his R&R on February 15, 2022. (Dkt. No. 97) Oliver filed his objections on March 7, 2022.[3] (Dkt. No. 103) Defendants filed a response to Oliver's objections on March 28, 2022, and Plaintiff filed a reply on April 8, 2022. (Dkt. Nos. 109, 112) Defendants have not objected to the R&R.

## IV.    THE R&R'S RECOMMENDATIONS AND PLAINTIFF'S OBJECTIONS

Judge Cott recommends that Defendants' motion to dismiss be granted as to the following claims:

- the Section 1983 and state law false arrest claims against Shea, O'Connell, and Gonzalez;

- the New York State Constitution claims against Shea, O'Connell, Gonzalez, Taylor, and the five Unidentified NYPD Officers;

- the supervisory liability claims against O'Connell and Shea;

- the respondeat superior claims against the City of New York;

___

[3] This Court granted Oliver's request for an extension of time to file objections. (Mar. 1, 2022 Order (Dkt. No. 99))

- the <u>Monell</u> claim against the City of New York;

- the race discrimination, hostile work environment, and retaliation claims against DOE, Chan, Mustillo, and [the School];

- the federal supervisory liability claims against Chan and Mustillo; and

- the federal <u>respondeat superior</u> claims against the DOE.

(<u>Id.</u> at 43, 78-79)

        Judge Cott recommends that Defendants' motion to dismiss be denied as

to the following claims:

- the Section 1983 and state law false arrest claims against Taylor and the five Unidentified NYPD Officers;

- the supervisory liability claim against Gonzalez;

- the race discrimination, hostile work environment, and retaliation claims against Estwick;

- the supervisory liability claims against Chan and Mustillo under the NYSHRL and the NYCHRL;

- the <u>respondeat superior</u> claims against the DOE under the NYSHRL and the NYCHRL; and

- the <u>Monell</u> claim against the DOE.

(<u>Id.</u>)

        Oliver objects to the following recommendations:

- that the Section 1983 and state law false arrest claims against Gonzalez (First and Second Claims for Relief) be dismissed;[4]

- that the supervisory liability claim against O'Connell (Fourth Claim for Relief) be dismissed;

---

[4] Although Plaintiff's list of objections on the second page of his objections brief references only his Second Cause of Action against Gonzalez for state law false arrest, it is evident from other portions of Plaintiff's brief that he intends to challenge Judge Cott's recommendations concerning the false arrest claim under both Section 1983 and state law. (<u>See</u> Pltf. Objs. (Dkt. No. 103) at 2, 6)

- that the <u>Monell</u> claim against the City based on the actions of NYPD officers (Third Claim for Relief) be dismissed;

- that the <u>respondeat superior</u> claim against the City for violations of the New York State Constitution (Seventh Claim for Relief) be dismissed;

- that all race discrimination, hostile work environment, and retaliation claims against the DOE, Chan, and Mustillo (Eighth, Ninth, Tenth, Eleventh, Twelfth and Thirteenth Claims for Relief) be dismissed; and

- that the Section 1983 supervisory liability claims against Chan and Mustillo (Fifteenth Claim for Relief) be dismissed.

(Pltf. Objs. (Dkt. No. 103), <u>passim</u>)

## DISCUSSION

## I. LEGAL STANDARDS

### A. Review of a Magistrate Judge's Report and Recommendation

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). "'The district judge evaluating a magistrate judge's recommendation may adopt those portions of the recommendation, without further review, where no specific objection is made, as long as they are not clearly erroneous.'" <u>Gilmore v. Comm'r of Soc. Sec.</u>, No. 09 Civ. 6241 (RMB) (FM), 2011 WL 611826, at *1 (S.D.N.Y. Feb. 18, 2011) (quoting <u>Chimarev v. TD Waterhouse Inv. Servs., Inc.</u>, 280 F. Supp. 2d 208, 212 (S.D.N.Y. 2003)). A decision is "clearly erroneous" when, "upon review of the entire record, [the court is] left with the definite and firm conviction that a mistake has been committed." <u>United States v. Snow</u>, 462 F.3d 55, 72 (2d Cir. 2006) (quotation marks and citation omitted).

Where a timely objection has been made to a magistrate judge's recommendation, the district judge "shall make a <u>de novo</u> determination of those portions of the report or specified

proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C).

However, "[o]bjections that are 'merely perfunctory responses argued in an attempt to engage

the district court in a rehashing of the same arguments set forth in the original [papers] will not

suffice to invoke de novo review.'" Phillips v. Reed Grp., Ltd., 955 F. Supp. 2d 201, 211

(S.D.N.Y. 2013) (second alteration in original) (quoting Vega v. Artuz, 97 Civ. 3775

(LTS)(JCF), 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002)).  "To the extent . . . that the

party . . . simply reiterates the original arguments, [courts] will review the Report strictly for

clear error." IndyMac Bank, F.S.B. v. Nat'l Settlement Agency, Inc., 07 Civ. 6865

(LTS)(GWG), 2008 WL 4810043, at *1 (S.D.N.Y. Nov. 3, 2008) (citing Pearson-Fraser v. Bell

Atl., No. 01 Civ. 2343 (WK), 2003 WL 43367, at *1 (S.D.N.Y. Jan. 6, 2003) and Camardo v.

Gen. Motors Hourly-Rate Emp. Pension Plan, 806 F. Supp. 380, 382 (W.D.N.Y. 1992)); see also

Ortiz v. Barkley, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) ("Reviewing courts should review a

report and recommendation for clear error where objections are merely perfunctory responses,

. . . rehashing . . . the same arguments set forth in the original petition." (quotation marks and

citations omitted)).

      Moreover, a party cannot invoke de novo review by citing new facts or making

new arguments that the party could have raised in the briefing before the magistrate judge yet did

not.  See Bolling v. City of New York, No. 18CIV5406PGGRWL, 2021 WL 961758, at *6

(S.D.N.Y. Mar. 15, 2021) ("[D]istrict courts 'will ordinarily refuse to consider evidentiary

material that could have been, but was not, presented to the magistrate judge in the first

instance.'") (quoting Brown v. Martuscello, No. 16-CV-6084 (CS)(PED), 2019 WL 3491461, at

*2 (S.D.N.Y. Aug. 1, 2019)); United States v. Gladden, 394 F. Supp. 3d 465, 480 (S.D.N.Y.

2019) (declining to consider a "'new argument[] raised in objections to a magistrate judge's

report and recommendation that could have been raised before the magistrate but [was] not.'")

(quoting Hubbard v. Kelley, 752 F. Supp. 2d 311, 313 (W.D.N.Y. 2009)).

**B.      Rule 12(b)(6) Motion to Dismiss**

"To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v.

Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

Under this standard, a plaintiff is required only to set forth a "short and plain statement of the

claim," Fed. R. Civ. P. 8(a), with sufficient factual "heft 'to sho[w] that the pleader is entitled to

relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)).

To survive a motion to dismiss, a plaintiff's "[f]actual allegations must be enough

to raise a right of relief above the speculative level," (Id. at 555), and a plaintiff's claims must be

"plausible on [their] face." Id. at 570.  "The plausibility standard is not akin to a 'probability

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."

Iqbal, 556 U.S. at 678.

"Where a complaint pleads facts that are 'merely consistent with' a defendant's

liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"

Id. (quotation marks omitted) (quoting Twombly, 550 U.S. at 557)  Moreover, where "the

allegations in a complaint, however true, could not raise a claim of entitlement to relief,"

Twombly, 550 U.S. at 558, or where a plaintiff has "not nudged [his] claims across the line from

conceivable to plausible, the[] complaint must be dismissed." Id. at 570.  "Nor does a complaint

suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556

U.S. at 678 (quoting Twombly, 550 U.S. at 557).  A complaint must provide factual allegations

sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it

rests." Port Dock & Stone Corp. v. Oldcastle Northeast Inc., 507 F.3d 117, 121 (2d Cir. 2007)

(citing Twombly, 550 U.S. at 555).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice [to establish entitlement to relief]." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555).

In resolving a motion to dismiss, a court may "consider . . . the complaint and any documents attached thereto or incorporated by reference and documents upon which the complaint relies heavily." Bldg. Indus. Elec. Contractors Ass'n v. City of New York, 678 F.3d 184, 187 (2d Cir. 2012) (quotation marks and citation omitted).  However, "[w]here . . . the allegations pled in the complaint are contradicted by documents on which the complaint relies[,] the reviewing court need not accept as true an allegation pled nor draw inferences in its favor." Alexander v. Bd. of Educ. of City Sch. Dist. of City of New York, 107 F. Supp. 3d 323, 331 (S.D.N.Y. 2015), aff'd sub nom. Alexander v. Bd. of Educ. of City of New York, 648 F. App'x 118 (2d Cir. 2016) (quotation marks and citation omitted).  Moreover, allegations raised for the first time in an opposition brief cannot defeat a motion to dismiss, because allegations in an opposition brief do not amend a complaint.  See Capers v. Kirby Forensic Psychiatric Ctr., No. 13-CV-6953(AJN), 2016 WL 817452, at *2 (S.D.N.Y. Feb. 25, 2016) (citing O'Brien v. Nat'l Prop. Analysts Partners, 719 F. Supp. 222, 229 (S.D.N.Y. 1989) ("[I]t is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss.")).

## II.   ANALYSIS

### A.   Recommendations as to which there Is No Objection

#### 1.   Dismissal of Section 1983 and State Law False Arrest Claims Against Shea and O'Connell

Defendants have moved to dismiss Oliver's false arrest claims, which are brought against all of the NYPD Defendants.  (R&R (Dkt. No. 97) at 27 (citing SAC (Dkt. No. 41) ¶¶ 166-71; Def. Br. (Dkt. No. 63-5) at 41-47))  As Judge Cott notes, however, "only Taylor and the

Five Unknown NYPD Officers are specifically alleged to have been Arresting Officers." (Id. (citing SAC (Dkt. No. 41) ¶ 8))  For this reason, the R&R recommends that "the claims for false arrest against [Shea and O'Connell] . . . be dismissed." (Id.)  This Court finds no clear error in that determination, and adopts Judge Cott's recommendation.

### 2.   Dismissal of New York State Constitution Claims

Defendants have moved to dismiss Oliver's equal protection claims and unreasonable search and seizure claims under the New York State Constitution.  (Def. Br. (Dkt. No. 63-5) at 44-45, 47, 54-55)  As to equal protection, Defendants argue that "[P]laintiff offers only conclusory allegations to support his claim that his treatment by the NYPD defendants was somehow based on his race" and offers no factual justification for the claim that the arresting officers "'were racially motivated'" in executing an unlawful arrest. (Id. at 47-48 (quoting SAC (Dkt. No. 41) ¶ 184))  As to unreasonable search and seizure, Defendants argue that any search of Oliver was incident to a lawful arrest and that the SAC's claims that the "'arresting officers . . . thrust [Plaintiff's] body into the wall . . . , forced [his] hands behind his back,'" and hurt his wrists by handcuffing him too tightly allege only de minimis injuries that do not amount to unconstitutionally excessive force.  (Id. at 44-45, 54-55 (quoting SAC (Dkt. No. 41) ¶ 80) (brackets in Def. Br.))

The R&R recommends dismissal of Oliver's New York State Constitution claims, but on different grounds.  The R&R states that "'no private right of action exists for violations of the New York State Constitution where the plaintiff has an alternative remedy under § 1983 for violations of parallel provisions of the U.S. Constitution.'"  (R&R (Dkt. No. 97) at 36 (quoting Buari v. City of New York, 530 F. Supp. 3d 356, 408 (S.D.N.Y. 2021)))  Observing that "[u]nreasonable search and seizure claims are largely cognizable under the Fourth Amendment of the United States Constitution, and equal protection claims can be brought under the

Fourteenth Amendment," the R&R concludes that Oliver "cannot maintain his claims under Article I, Sections 11 and 12 of the New York Constitution because § 1983 provides an adequate remedy here." (Id.) This Court finds no clear error in that determination, and adopts Judge Cott's recommendation.

### 3.   Dismissal of Supervisory Liability Claim Against Shea

In moving to dismiss Oliver's supervisory liability claim against Shea, Defendants contend that Oliver "simply alleges, in a conclusory manner, that [Shea] 'devised, implemented, enforced, encouraged, and sanctioned' the NYPD's alleged policy of profiling and falsely arresting black men." Defendants further note that "Shea was not the Police Commissioner at the time of the incident alleged in the complaint." (Def. Br. (Dkt. No. 63-5) at 49 (quoting SAC (Dkt. No. 41) ¶ 179))

In granting the motion to dismiss, Judge Cott notes that "'supervisors cannot be held liable based solely on the alleged misconduct of their subordinates,'" and that "Oliver alleges no additional facts demonstrating liability against Shea . . . other than [his] status as commissioner." (R&R (Dkt. No. 97) at 37-38 (quoting Vasquez v. Reilly, No. 15-CV-9528 (KMK), 2017 WL 946306, at *11 (S.D.N.Y. Mar. 9, 2017) )) Because "Oliver has not pleaded any non-conclusory facts demonstrating [Shea's] personal involvement in the underlying violation," Judge Cott recommends that the supervisory liability claim against Shea be dismissed. (Id. at 39) This Court finds no clear error in that determination, and adopts Judge Cott's recommendation.

### 4.   Dismissal of *Respondeat Superior* Claim Against the City

Defendants contend that the City "may be liable under § 1983 only 'if the governmental body itself "subjects" a person to a deprivation of rights or "causes" a person "to be subjected to" such deprivation.'" (Def. Br. (Dkt. No. 63-5) at 50 (quoting Connick v.

Thompson, 563 U.S. 51, 60 (2011)) (in turn quoting Monell v. Dep't of Soc. Servs., 436 U.S.

658, 692 (1978)))  Judge Cott agrees that "Oliver's respondeat superior claim as to the City of

New York for the conduct of the Officers pursuant to § 1983 . . . fails as a matter of law."  (R&R

(Dkt. No. 97) at 39)  This Court finds no clear error in that determination, and adopts Judge

Cott's recommendation.

**5.    Dismissal of Race Discrimination, Hostile Work
Environment, and Retaliation Claims Against the School**

The R&R recommends that "[t]he claims against [the School] . . . be dismissed, as

it is not a proper party to the case," given that it is "neither an individual defendant nor a school

district operating a public school with the possibility of Monell liability."  (R&R (Dkt. No. 97) at

70 (citing Z.F.X. by Vankesteren v. Riverhead Central School District, No. 20-CV-962 (GRB)

(ST), 2021 WL 1238842, at *2 (E.D.N.Y. Apr. 2, 2021) (holding that "schools . . . do not have a

legal identity separate from their school district," and "therefore[] cannot sue or be sued")

(quotation omitted)).  This Court finds no clear error in that determination, and adopts Judge

Cott's recommendation.

**6.    Dismissal of Section 1983 *Respondeat Superior*
Claim Against the DOE**

Defendants contend that Plaintiff's "respondeat superior [claim] against DOE

must be dismissed because plaintiff has not plausibly alleged discrimination or any underlying

violation."  (Def. Br. (Dkt. No. 63-5) at 39)  In dismissing this claim, Judge Cott notes that "'[a]

municipality cannot be held liable under § 1983 on a respondeat superior theory,' nor 'solely

because it employs a tortfeasor.'"  (R&R (Dkt. No. 97) at 74 (first quoting Monell, 436 U.S. at

691; then quoting Lawton v. Town of Orchard Park, No. 14-CV-867S, 2017 WL 3582473, at *6

(W.D.N.Y. Aug. 18, 2017) (further quotation omitted)))  This Court finds no clear error in that

determination, and adopts Judge Cott's recommendation.

### 7.   Denial of Motion to Dismiss Section 1983 and State Law False Arrest Claims Against Taylor and the Five Unidentified NYPD Officers

Defendants contend that Oliver's Section 1983 false arrest claims against the NYPD Defendants should be dismissed.  (Def. Br. (Dkt. No. 63-5) at 41-47)  According to Defendants, based on "an allegation by a child, a special needs student, G.C., that [P]laintiff 'caressed' her and made inappropriate sexual comments to her[,] . . . . the defendant officers had probable cause to arrest [P]laintiff for endangering the welfare of a child," and had no obligation to further investigate before arresting Plaintiff.  (Id. at 43-44 (citing SAC (Dkt. No. 41) ¶ 73)) Defendants also contend that – even if the officers lacked probable cause – there was "'arguable probable cause to arrest,'" and therefore the arresting officers are entitled to qualified immunity. (Id. at 46-47 (quoting Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004)))

Judge Cott recommends that the motion to dismiss be denied as to the false arrest claims against Taylor and the arresting officers.  As to probable cause, Judge Cott notes that "[a]ccepting all factual allegations as true and drawing all reasonable inferences in favor of Oliver requires the Court to consider that at the time of the arrest, the only information known to the officers was provided by either Estwick or G.C.'s parents – third party informants who did not witness the incident first-hand."  Given these circumstances, Judge Cott concludes that "[p]robable cause cannot be found as a matter of law."  (Id. at 29)  As to duty to investigate, Judge Cott concludes that – although "[o]fficers are not required to look for evidence that could eliminate probable cause" – the SAC's allegations that (1) the arresting officers conducted no investigation before arresting Oliver, and (2) later decided to release him after interviewing two student-witnesses, "support 'an inference that [the Defendant officers] had made up [their] mind[s] based only on . . . [a] secondhand report[].'"  (Id. at 30-31 (quoting Pehush v. Ashworth, 757 F. App'x 47, 51 (2d Cir. 2018)) (brackets in R&R))  Finally, Judge Cott finds that dismissal

should not be granted on qualified immunity grounds, because the "qualified immunity [inquiry]

turns on a disputed factual question that cannot be resolved on a Rule 12(b)(6) motion: the

knowledge of the officers at the time of the arrest."  (Id. at 34)  This Court finds no clear error in

Judge Cott's determinations, and adopts his recommendations.

### 8. Denial of Motion to Dismiss Supervisory Liability Claim Against Gonzalez

Defendants move to dismiss the supervisory liability claim against Gonzalez

because "the only specific factual allegation that [P]laintiff makes against him is that he

'verified' plaintiff's arrest report[,] . . . . [and] that is not enough to maintain a supervisory

liability claim."  (Def. Br. (Dkt. No. 63-5) at 49-50 (quoting SAC (Dkt. No. 41) ¶ 8))  Relying on

Bobbit v. Marzan, No. 16-CV-2042 (AT), 2020 WL 5633000, at *7 n.5 (S.D.N.Y. Sept. 21,

2020), Judge Cott recommends that the motion to dismiss be denied, because "the record needs

to be further developed to determine [Gonzalez's] knowledge of the facts giving rise to Oliver's

arrest" at the time Gonzalez approved the arrest.  (R&R (Dkt. No. 97) at 38 (citing Bobbit, 2020

WL 5633000, at *7 n.5 ("[T]he Court held that Plaintiff's supervisory liability claims against

[the supervising officers] could survive a motion to dismiss because Plaintiff alleged that [the

supervising officers had] approved Plaintiff's arrest.") (discussing previous order in case;

quotation omitted)))  This Court finds no clear error in that determination, and adopts Judge

Cott's recommendation.

### 9. Denial of Motion to Dismiss Race Discrimination, Hostile Work Environment, and Retaliation Claims Against Estwick

#### a. Defendants' Arguments

Defendants contend that certain of Plaintiff's discrimination claims are waived or

time-barred; that Plaintiff has not sufficiently alleged the elements of race discrimination, hostile

work environment, and retaliation; and that the DOE Defendants are entitled to qualified immunity.  (Def. Br. (Dkt. No. 63-5) at 24-40)

As to waiver, Defendants contend that Plaintiff – in settling an earlier lawsuit against some of the same DOE Defendants – released any claims "based upon events occurring prior to December 27, 2018."  (Def. Br. (Dkt. No. 63-35) at 24)

As to the statute of limitations – after noting that the Complaint was filed on December 6, 2019 – Defendants make the following arguments:

- because "[d]iscrimination and retaliation claims brought under § 1983 carry a three-year statute of limitations . . . .  any § 1983 claims arising from events occurring prior to December 6, 2016 are time-barred against all DOE Defendants";

- because "Title VII claims require timely administrative exhaustion by filing an administrative complaint with the EEOC within 300 days of the alleged discrimination[,] . . . .  any Title VII claims arising from events occurring prior to 300 days before the EEOC charge was filed are time-barred against all DOE Defendants";

- because the "one-year statute of limitations [under the NYSHRL and NYCHRL] is applicable to the DOE itself, DOE schools, and officers of a school district, including superintendents . . . .  any [NYSHRL and NYCHRL] claims arising from events occurring prior to December 6, 2018 are time-barred as asserted against all DOE Defendants apart from Principal Estwick";

- because "[NYSHRL and NYCHRL] claims brought against DOE principals are governed by a three-year statute of limitations[,] . . . claims arising from events occurring prior to December 6, 2016 are time-barred as asserted against Estwick"; and

- because a plaintiff bringing a NYSHRL or NYCHRL claim against the DOE, its schools, or its officers "is required to file a notice of claim within 90 days of the claim's accrual[,] . . . .  any [NYSHRL or NYCHRL] claims accruing prior to March 16, 2019 – 90 days prior to the plaintiff's service of the notice of claim – are time-barred as asserted against all DOE Defendants apart from Estwick."

(Def. Br. (Dkt. No. 63-5) at 24-26 (quotations and citations omitted))

As to Plaintiff's race discrimination claims, Defendants argue that "[P]laintiff has alleged neither an adverse employment action nor a connection between an adverse action and his race.  Plaintiff remains gainfully employed to this day, and does not allege a termination,

suspension, demotion, less distinguished title, or loss of salary." (Id. at 28)  Defendants further argue that "[t]he only actions alleged by [P]laintiff that could conceivably represent adverse employment actions sufficient to undergird a Title VII, § 1983, or [NYSHRL] discrimination claim are [P]laintiff's allegations that he received a letter to his file and that he was reassigned out of his classroom while DOE conducted an investigation into his alleged misconduct." According to Defendants, however, neither action constitutes an adverse employment action. (Id.; see SAC (Dkt. No. 41) ¶¶ 107, 131)  And even "assuming, arguendo, that [P]laintiff ha[s] plausibly alleged an adverse employment action, he fails to allege any connection between a purported adverse action and his race.  Plaintiff does not allege any racist comments, nor does he allege any racist acts taken by any defendant, apart from conclusory statements." (Def. Br. (Dkt. No. 63-5) at 30)  As to the SAC's assertion that the DOE Defendants treated Oliver more harshly than White teachers who had faced similar allegations, Defendants complain that Plaintiff "does not name any of these three teachers[,] and the allegations concerning these teachers are all vague, unspecific, and lacking in context."  Accordingly, "the misconduct [P]laintiff is attributing to these three white teachers is, on its face, [not] []comparable to the misconduct that [P]laintiff was accused of committing."  (Id. at 33)

　　　　With respect to Plaintiff's hostile work environment claims, Defendants argue that "[P]laintiff alleges no facts from which the conclusion can be drawn that any action was taken against [P]laintiff because he is black," and that "the allegations [in the SAC] – including [P]laintiff's reassignment with pay pending an investigation, and receiving a letter to file that did not result in disciplinary charges – fall well short of plausibly alleging a severe and pervasive or abusive working environment, let alone one caused by race-based animus."  (Def. Br. (Dkt. No. 63-5) at 35 (quotations omitted))

With respect to Plaintiff's retaliation claims, Defendants assert that "[t]he only protected activities alleged by [P]laintiff are (1) a 2014 arbitration proceeding, (2) a 2014 OEO complaint, (3) the filing of his prior lawsuit against DOE in 2017, and (4) the filing of a 2018 EEOC charge." (Id. at 37 (citing SAC (Dkt. No. 41) ¶¶ 5, 53, 216)) Defendants argue that Oliver "alleges no facts connecting any of these alleged protected activities with any of the challenged acts in the instant case." (Id.) Defendants further argue that Oliver cannot support an inference of retaliation based on "the temporal proximity of the protected activities and the challenged acts," because the alleged retaliatory acts – his arrest and subsequent reassignment and disciplinary letter – are "far too attenuated" from "the four protected activities," which "allegedly occur[ed] in 2014, . . . 2017, and 2018." (Id. at 38)

Finally, Defendants argue that, because "there is no violation and therefore certainly no knowing violation, . . . . qualified immunity shields the individual [D]efendants to the extent sued in their individual capacities." (Id. at 40)

### b. The R&R's Recommendations

As to the release, Judge Cott notes that "Oliver's claims all stem from allegations made against him on March 21, 2019, his March 22, 2019 arrest, and his treatment thereafter." Given that Oliver signed the release on December 27, 2018, he did not waive any claims arising after that date. (R&R (Dkt. No. 97) at 24) This Court finds no clear error in that determination.

As to timeliness, Judge Cott finds that Oliver's claims fall within all applicable time limits, including Section 1983's three-year statute of limitations; Title VII's requirement that an administrative complaint be filed with the EEOC within 300 days of the alleged discriminatory acts; the NYSHRL and NYCHRL's one-year statute of limitations as to certain claims; and the 90-day notice of claim requirement. (Id. at 24-25) This Court finds no clear error in these determinations.

As to race discrimination, Judge Cott finds that Oliver sufficiently alleges an adverse employment action with respect to his assignment to the Rubber Room and the email from Estwick to parents of School students stating that Oliver has been reassigned pending an investigation. (Id. at 48-51) The R&R further concludes that Oliver has pled facts giving rise to an inference of discrimination, citing the SAC's allegations that White teachers facing similar allegations faced no discipline. (Id. at 51-54) This Court finds no clear error in that determination.

As to hostile work environment, Judge Cott notes that, "while actions that occurred prior to Oliver's arrest on March 22, 2019 are largely barred from being raised as distinct claims on which to file suit, the context of Oliver's work environment can serve as background evidence in support of a hostile work environment claim." (Id. at 58 (quotation omitted)) Citing the SAC's allegations that Estwick repeatedly expressed unfounded concerns about Oliver's relationships with students and "'predatory'" intentions toward them – including by spreading rumors and placing a counseling letter in Oliver's file – and noting the common racist stereotype of Black men as predators, Judge Cott concludes that Oliver has adequately pled a hostile work environment. (Id. at 56-59 (quoting SAC (Dkt. No. 41) ¶ 61)) This Court finds no clear error in that determination.

As to retaliation, Judge Cott notes that "settlement of a previous claim can constitute a protected activity for the purposes of a retaliation claim" (id. at 64-65 (citing Pediford-Aziz v. City of New York, 170 F. Supp. 3d 480, 489 (E.D.N.Y Mar. 17, 2016) , and McFarlane v. Harry's Nurses Registry, No. 17-CV-6350 (PKC) (PK), 2020 WL 1643781, at *14 (E.D.N.Y. Apr. 2, 2020))), and finds that "Oliver therefore participated in protected activity when he settled the Previous Action on December 27, 2018." (Id. at 65) Judge Cott further finds

that the time between the December 27, 2018 settlement and the alleged adverse actions on

March 22, 2019 (85 days) is less than three months.  Given this proximity and the unusually

harsh treatment Oliver received after G.C.'s allegation, Judge Cott concludes that he has

"sufficiently [demonstrated] a causal connection at this early stage in the proceedings."  (Id. at

67-69 (quotation omitted))  This Court finds no clear error in that determination.

      As to Estwick's personal involvement, Judge Cott finds that the SAC pleads facts

showing that he "was personally involved in Oliver's arrest . . . and the disciplinary action taken

against Oliver . . . . [and] supervised White Teachers Nos. 1-3, Oliver's alleged comparators."

(Id. at 73 (citing SAC (Dkt. No. 41) ¶¶ 73-79, 109, 112, 138, 142, 145))  The R&R therefore

concludes that "Oliver has alleged sufficient facts to support a claim against Estwick for

violating his . . . right to be free from race discrimination, a hostile work environment, and

retaliation."  (Id.)[5]  This Court finds no clear error in that determination.[6]

      This Court adopts Judge Cott's recommendation that Defendants' motion to

dismiss be denied as to Plaintiff's race discrimination, hostile work environment, and retaliation

claims against Estwick.

---

[5]  The R&R recommends that Defendants' motion to dismiss be denied as to "[t]he race discrimination, hostile work environment, and retaliation claims against Estwick (Eighth through Thirteenth, and Sixteenth through Twenty-First Claims)."  (R&R (Dkt. No. 97) at 78 (capitalization altered))  However, Estwick is not named in the Eighth, Ninth, and Tenth Causes of Action, which assert claims under Title VII, and which are brought only against Defendant DOE.  (SAC (Dkt. No. 41) ¶¶ 192-206)

[6]  The R&R does not explicitly discuss qualified immunity with respect to Oliver's claims against the DOE Defendants.  Defendants' qualified immunity argument is premised on the notion that the SAC does not adequately plead any underlying violation of the discrimination laws, however.  (See Def. Br. (Dkt. No. 63-5) at 40 (arguing that because "there is no violation and therefore certainly no knowing violation . . . . qualified immunity shields the individual defendants to the extent sued in their individual capacities"))  Because – as Judge Cott concludes – the SAC pleads actionable conduct, Defendants' qualified immunity argument fails.

10.    **Denial of Motion to Dismiss Supervisory Liability Claims Against
Chan and Mustillo under the NYSHRL and the NYCHRL**

Defendants argue that Plaintiff's "supervisory liability [claims] against defendants

. . . Chan [and] Mustillo . . . must be dismissed because [P]laintiff has not plausibly alleged

discrimination or any underlying violation." (Def. Br. (Dkt. No. 63-5) at 39)  They further argue

that, "[t]o the extent that [P]laintiff is asserting . . . aiding and abetting claims under the

[NYSHRL] and [NYCHRL], those claims would also fail.  An individual defendant may be held

liable under § 296(6) of the [NYSHRL] or § 8-107(6) of the [NYCHRL] for aiding and abetting

an employer's violation of the laws] 'if he participates in the conduct giving rise to the

discrimination claim.'  However, where the complaint fails to plausibly state an underlying

violation of the [NYSHRL] or [NYCHRL] there can be no aider-and-abettor liability."  (Id.

(quoting Schanfield v. Sojitz Corp. of Am., 663 F. Supp. 2d 305, 344 (S.D.N.Y. 2009), and

citing Kato v. Ishihara, 239 F. Supp. 2d 359, 365 (S.D.N.Y. 2002)))

Noting that the NYSHRL and the NYCHRL allow respondeat superior liability,

and that "Chan and Mustillo were [Estwick's] supervisors during the time of the alleged

violations," Judge Cott recommends that "the motion to dismiss claims for supervisory liability

against Chan and Mustillo . . . on state law grounds be denied."  (R&R (Dkt. No. 97) at 75)

This Court concludes that Judge Cott's finding on this point is clear error.  While

a municipality or employer can be liable for a supervising employee's violation of the NYSHRL

or NYCHRL under the doctrine of respondeat superior, see McCalla v. City of New York, No.

15CIV8002LAKAJP, 2017 WL 3601182, at *44 (S.D.N.Y. Aug. 14, 2017) ("[P]laintiffs

establish liability against the City for their NYSHRL and NYCHRL claims by showing that the

alleged discriminatory conduct was perpetrated by a supervisor."), report and recommendation

adopted, No. 15-CV-8002 (LAK), 2017 WL 4277182 (S.D.N.Y. Sept. 22, 2017); Cherry v. New

York City Hous. Auth., 564 F. Supp. 3d 140, 183 (E.D.N.Y. 2021) ("[A] supervisor's conduct is generally imputed to the employer under the NYSHRL."); N.Y.C. Admin. Code § 8-107(13)(b)(1) ("An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent . . . where . . . [t]he employee or agent exercised managerial or supervisory responsibility.") (formatting and numbering altered), supervisors such as Chan and Mustillo cannot be held vicariously liable under those statutes.  Instead, to establish a supervisor's liability under these statutes, a plaintiff must show that the supervisor was personally involved in the discrimination at issue – either directly or as an aider and abettor.  See Foster v. Consol. Edison Co. of New York, Inc., No. 21CV3570(DLC), 2021 WL 4461163, at *1 (S.D.N.Y. Sept. 29, 2021) (stating that Feingold v. New York, 366 F.3d 138, 157-59 (2d Cir. 2004) "set[s] forth an actual participation standard for individual liability under the NYSHRL and NYCHRL"); Williams v. New York City Hous. Auth., No. 16-CV-8193 (VSB), 2021 WL 2077817, at *12 (S.D.N.Y. May 24, 2021) (stating that the personal involvement standard for supervisory liability set out in Littlejohn v. City of New York, 795 F.3d 297, 314 (2d Cir. 2015) applies to "NYSHRL and NYCHRL claims") (citing Britt v. Merrill Lynch & Co., No. 08 CV 5356(GBD), 2011 WL 4000992, at *11 (S.D.N.Y. Aug. 26, 2011)).

As discussed below, the SAC's allegations are not sufficient to demonstrate that either Chan or Mustillo personally participated in discriminatory acts against Plaintiff. Accordingly, neither direct nor aiding and abetting liability is adequately pled.

For these reasons, that portion of the R&R addressing the SAC's supervisory liability claims against Chan and Mustillo under the NYSHRL and the NYCHRL will not be adopted, and those claims will be dismissed.

11.     **Denial of Motion to Dismiss *Respondeat Superior* Claims**
<u>**Against the DOE under the NYSHRL and NYCHRL**</u>

Defendants argue that Plaintiff's "<u>respondeat superior</u> [claims] against DOE must

be dismissed because [P]laintiff has not plausibly alleged discrimination or any underlying

violation." (Def. Br. (Dkt. No. 63-5) at 39)  Judge Cott concludes, however, that Plaintiff has

plausibly alleged discrimination and retaliation claims under the NYSHRL and the NYCHRL,

and he recommends that Defendants' motion to dismiss be denied.  (R&R (Dkt. No. 97) at 75)

This Court finds no error in that determination, and adopts Judge Cott's recommendation.

12.     <u>**Denial of Motion to Dismiss *Monell* Claim Against the DOE**</u>

Defendants argue that Oliver's <u>Monell</u> claim against the DOE should be

dismissed because he "does not allege an official municipal policy, practice, or custom of DOE.

Instead, the SAC includes a boilerplate recitation of the <u>Monell</u> liability standard containing

wholly conclusory allegations of DOE 'cultivat[ing] and sanction[ing] a culture in which

Defendant Estwick's acts of racial discrimination and retaliation against [Plaintiff] were

tolerated.'" (Def. Br. (Dkt. No. 63-5) at 27 (quoting SAC (Dkt. No. 41) ¶ 224) (brackets in

original))

Judge Cott concludes, however, that the SAC alleges that the DOE was on notice

of a pattern of discriminatory conduct against Oliver but displayed a "consistent failure to

investigate complaints" and "failed to supervise Estwick in his treatment of Oliver."

Accordingly, he recommends that Defendants' motion to dismiss the <u>Monell</u> claim against the

DOE be denied.  (R&R (Dkt. No. 97) at 77)

This Court finds no clear error in Judge Cott's determination and adopts his

recommendation.

**B.**    **Recommendations to Which Oliver Has Objected**

  **1.** **Dismissal of Direct False Arrest Claims Against Gonzalez**

  As noted above, Defendants have moved to dismiss all of Oliver's false arrest claims.  (Def. Br. (Dkt. No. 63-5) at 41-47)

  As to the false arrest claims against Gonzalez, Judge Cott points out that "only Taylor and the Five Unknown NYPD Officers are specifically alleged to have been Arresting Officers.  SAC ¶ 8.  Therefore, because no specific allegations of direct involvement in the arrest are made as to . . . Gonzalez, the claims for false arrest against [him] should be dismissed." (R&R (Dkt. No. 97) at 27)

  Plaintiff objects to this recommendation, arguing that (1) "the SAC alleges that Gonzalez 'approved' the arrest . . . [and] therefore adequately alleges Gonzalez's direct involvement" (Pltf. Objs. (Dkt. No. 103) at 7 (quoting SAC (Dkt. No. 41) ¶ 93)); and (2) "[t]hrough discovery, Mr. Oliver has since learned that Gonzalez was present at Mr. Oliver's arrest."  (Id.)

  Plaintiff's first ground for objection merely rehashes arguments made in opposing the motion to dismiss.  (See Pltf. Opp. (Dkt. No. 64) at 46 ("With respect to Gonzalez, Mr. Oliver adequately alleged that Gonzalez satisfies the [personal involvement] factor because he 'approved' Mr. Oliver's arrest for endangering the welfare of a child.  This allegation is sufficient to establish that Gonzalez participated directly in Mr. Oliver's arrest. . . .") (quoting SAC (Dkt. No. 41) ¶ 93))  Accordingly, this Court reviews this recommendation for clear error.

  Courts in this Circuit are split as to whether a supervising officer's approval of an arrest constitutes personal involvement.  Compare Vasquez v. Yadali, No. 16-CV-895 (NSR), 2020 WL 1082786, at *11 (S.D.N.Y. Mar. 5, 2020) (granting motion to dismiss because "the mere fact that [the supervising officer] signed off on Plaintiff's arrest, without more, is

insufficient to establish personal involvement in the alleged constitutional violation") with Sullivan v. City of Glens Falls, No. 122CV630GTSATB, 2022 WL 2390242, at *11 (N.D.N.Y. July 1, 2022) (denying motion to dismiss as to supervising officer who was alleged to have "approved the [plaintiff's] arrest prior to its execution" but not to have been present at the arrest), report and recommendation adopted, No. 122CV0630GTSATB, 2022 WL 4364026 (N.D.N.Y. Sept. 21, 2022), and Vett v. City of New York, No. 20-CV-2945, 2022 WL 47231, at *10 (S.D.N.Y. Jan. 5, 2022) (denying motion to dismiss as to approving officer because the fact that he "approved Plaintiff's arrest but was not present at the scene to physically execute Plaintiff's arrest [did] not negate his participation in the arrest or that he intended to cause Plaintiff to be confined"). Given the split in authority, this Court cannot find clear error.

As to Plaintiff's second ground for objection – which is premised on what discovery has allegedly revealed – Plaintiff cannot premise his objections on alleged facts not pled in the SAC. See Bolling, 2021 WL 961758, at *6.

For these reasons, Plaintiff's objections are rejected, and the Court will adopt the R&R's recommendation that the direct false arrest claim against Defendant Gonzalez be dismissed.

## 2. **Dismissal of Supervisory Liability Claim Against O'Connell**

Defendants argue that the supervisory liability claim against O'Connell should be dismissed because "[P]laintiff simply alleges, in a conclusory manner, that [O'Connell] 'devised, implemented, enforced, encouraged, and sanctioned' the NYPD's alleged policy of profiling and falsely arresting black men . . . . [and] provide[s] no underlying factual allegations to support this claim." (Def. Br. (Dkt. No. 63-5) at 49 (quoting SAC (Dkt. No. 41) ¶ 179))

Judge Cott notes that under Tangreti v. Bachmann, 983 F.3d 609 (2d Cir. 2020), "'[t]here is no special rule for supervisory liability,'" and accordingly, a "plaintiff must 'plead

and prove "that each Government-official defendant, through the official's own individual actions, has violated the Constitution."'" (R&R (Dkt. No. 97) at 37 (quoting Tangreti, 983 F.3d at 618) (in turn quoting Iqbal, 556 U.S. at 676)) Judge Cott concludes that "Oliver has not pleaded any non-conclusory facts demonstrating [O'Connell's] personal involvement in the underlying violation," and therefore recommends that "the motion to dismiss supervisory liability claims . . . be . . . . granted as against O'Connell . . . ." (Id. at 39)

In objecting to this recommendation, Plaintiff contends that the December 2020 Tangreti decision does not apply to the August 2020 SAC, and that "the SAC properly stated a claim for supervisory liability against O'Connell under the prevailing legal standard [when] the SAC was filed." (Pltf. Objs. (Dkt. No. 103) at 8) (citing Colon v. Coughlin, 58 F.3d 865 (2d Cir. 1995), for the "five categories of evidence on which a plaintiff could rely to establish an underlying constitutional violation")) This objection is not persuasive.

"'[T]he 'general rule of long standing [is] that judicial precedents normally have retroactive as well as prospective effect.'" Hypolite v. Health Care Servs. of New York Inc., 256 F. Supp. 3d 485, 492-93 (S.D.N.Y. 2017) (quoting Margo v. Weiss, 213 F.3d 55, 60 (2d Cir. 2000)) (further quotations omitted; alterations in Hypolite); see Marquez v. Garland, 13 F.4th 108, 111 (2d Cir. 2021) ("Ordinarily, legislation operates prospectively while judicial holdings interpret existing law and thus operate retroactively."). Moreover, Tangreti does not purport to announce a new rule, but rather applies the pleading standards set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009) to a Section 1983 supervisory liability claim. See Tangreti, 983 F.3d at 612 ("Following [Iqbal], courts may not apply a special rule for supervisory liability. Rather, the plaintiff must directly plead and prove that 'each Government-official defendant, through the official's own individual actions, has violated the Constitution.'") (quoting Iqbal, 556 U.S. at

676).  Courts in this Circuit have held that the pleading standard set forth in Iqbal and Bell Atl.

Corp. v. Twombly, 550 U.S. 544, 570 (2007) has retroactive effect.  See Crabhouse of

Douglaston Inc. v. Newsday Inc., 801 F. Supp. 2d 64, 73 n.9 (E.D.N.Y. 2011) (citing Iqbal v.

Hasty, 490 F.3d 143 (2d Cir. 2007), rev'd and remanded on other grounds by Iqbal, 556 U.S.

662).

        In sum, Judge Cott correctly applied Tangreti's holding overturning "the 'special

standards for supervisory liability set forth' in [Colon], and instead requir[ing] that '[t]he

violation must be established against the supervisory official directly.'"  (R&R (Dkt. No. 97) at

37-38 (quoting Tangreti, 983 F.3d at 617-18))  Judge Cott also correctly determined that the

Tangreti standard is not met with respect to the supervisory liability claims against Defendant

O'Connell, because the SAC contains only conclusory assertions that O'Connell "did not take

any steps to correct [the] unlawful custom [of racial profiling]" and "[was] grossly negligent in

[his] supervision of the six Arresting Officers."  (SAC (Dkt. No. 41) ¶¶ 180-81; see R&R (Dkt.

No. 97) at 39)

        In objecting to the R&R's recommendation that the supervisory liability claim

against Defendant O'Connell be dismissed, Oliver also argues that – in an interrogatory response

– Defendants identified O'Connell as a "person with knowledge or information concerning Mr.

Oliver's arrest."  (Pltf. Objs. (Dkt. No. 103) at 9)  This objection fails for several reasons.  As an

initial matter, and as stated above, Plaintiff cannot premise his objections on alleged facts not

pled in the SAC.  See Bolling, 2021 WL 961758, at *6.  Moreover, the "no set of facts" standard

cited by Plaintiff was explicitly overruled in Twombly.  See Twombly, 550 U.S. at 562-63

(stating that the "no set of facts" standard "is best forgotten") (quotation omitted); see also Iqbal

v. Hasty, 490 F.3d at 155 (noting that the Supreme Court  in Twombly "explicitly disavowed"

the "no set of facts" standard); <u>E.E.O.C. v. Port Auth. of New York & New Jersey</u>, 768 F.3d 247,

253 (2d Cir. 2014) (The "[no set of facts] standard was abandoned by the Court's later rulings in

<u>Twombly</u> and <u>Iqbal</u>, which clarified the proper Rule 8 standard as being whether a complaint

alleged 'enough facts to state a claim to relief that is plausible on its face,' such that a court could

'draw the reasonable inference that the defendant is liable for the misconduct alleged.'") (first

quoting <u>Twombly</u>, 550 U.S. at 570; then quoting <u>Iqbal</u>, 556 U.S. at 678).

In sum, Plaintiff's objection is overruled, and this Court adopts the R&R's

recommendation that the supervisory liability claim against Defendant O'Connell be dismissed.

### 3.     Dismissal of the Section 1983 *Monell* Claim Against the City

In asserting a Section 1983 <u>Monell</u> claim premised on the NYPD's alleged

practice of profiling and harassing Black males, Oliver references <u>Floyd v. City of New York</u>,

959 F. Supp. 2d 540 (S.D.N.Y. 2013), various media reports, and a June 2019 report from the

New York City Department of Investigation (the "DOI"), which discusses citizen complaints of

"bias-based policing."  (SAC (Dkt. No. 41) ¶¶ 100-06)

In arguing that Plaintiff's Section 1983 <u>Monell</u> claim should be dismissed,

Defendants contend that "[P]laintiff attempts to make out a <u>Monell</u> claim by reciting facts and

articles pertaining to a line of cases that have nothing to do with the claims underlying his

alleged constitutional violation" – that is, the stop-and-frisk practices at issue in <u>Floyd</u>.  (Def. Br.

(Dkt. No. 63-5) at 51)  Defendants further argue that Plaintiff's <u>Monell</u> claim – which is

premised on various post-<u>Floyd</u> sources stating that "blacks make up a disproportionate number

of the people arrested by the NYPD" – is not "plausible, [because Plaintiff does not make]

specific allegations that [the City] was the moving force behind a constitutional violation."  (<u>Id.</u>

at 51-52)  Defendants also cite several cases in this Circuit finding media articles and unrelated

prior lawsuits insufficient to support a <u>Monell</u> claim premised on the NYPD's alleged improper practices.  (<u>Id.</u> at 52 (citing cases))

Judge Cott recommends that Plaintiff's <u>Monell</u> claim be dismissed, because it is not plausible that <u>Floyd</u>, the news articles, and the DOI report "put the City on notice . . . [of] the NYPD's [alleged] widespread practice of racial profiling and bias-based policing that may have led to Oliver's arrest. . . ."  (R&R (Dkt. No. 197) at 42)

While Plaintiff does not object to Judge Cott's analysis of <u>Floyd</u>, the media reports, and the DOI report, he asserts that (1) "the NYPD undoubtedly had access to the underlying [arrest] records" discussed in the media reports and therefore "must have been aware of the NYPD's practice of racial profiling"; and (2) "the NYPD must have been aware of [] complaints [of biased policing] before Mr. Oliver's arrest because the complaints were made directly to the NYPD.  Indeed, as noted in the release accompanying the [June 2019] DOI report, the 'NYPD began separately investigating and tracking [bias-based policing] complaints' in 2014 . . . [and] received at least 3,495 [such complaints] . . . through the end of 2018."  (Pltf. Objs. (Dkt. No. 103) at 10-11  (quoting Complaints of Biased Policing in New York City: An Assessment of NYPD's Investigations, Policies, and Training, New York City Department of Investigation, Office of the Inspector General for the NYPD, June 2019, available at https://www1.nyc.gov/assets/doi/reports/pdf/2019/Jun/19BiasRpt_62619.pdf ("June 2019 DOI Report")))

Plaintiff's argument that the NYPD was on notice of a widespread practice of "bias-based policing" at the time of Plaintiff's March 2019 arrest is not persuasive.  While Plaintiff asserts that the NYPD "undoubtedly had access to [arrest] records prior to [Oliver's] arrest" and therefore "must have been aware of the NYPD's practice of racial profiling" (Pltf.

Objs. (Dkt. No. 103) at 10), that claim is speculative and conclusory.  And the June 2019 DOI Report cited by Plaintiff – issued three months after Plaintiff's arrest – addresses deficiencies in how the NYPD addresses complaints of biased policing; the June 2019 DOI Report is not a study of whether or not the NYPD actually engages in biased policing.  (June 2019 DOI Report at 1-2) Moreover, the SAC does not allege that either the NYPD or the DOI analyzed arrests and citizen complaints and found evidence of biased policing and racial profiling.  Nor does Oliver explain why the arrest records and citizen complaints are, on their face, evidence of racial profiling sufficient to constitute notice.  See Hanson v. New York City, No. 15-CV-1447 (MKB), 2018 WL 1513632, at *21 n.7 (E.D.N.Y. Mar. 27, 2018)("Although Plaintiff argues that the timing of the [DOI] Report is irrelevant because the City had notice of the pattern of excessive force as a result of the pattern itself, Plaintiff points to no evidence to substantiate his argument.").

In sum, this Court finds no error in Judge Cott's treatment of Plaintiff's Section 1983 Monell claim.  Plaintiff's objection on this point is overruled, and the recommendation that this claim be dismissed will be adopted.

### 4.      Dismissal of *Respondeat Superior* Claim Against the City Premised on New York State Constitution

The R&R states that, "[t]o the extent that Oliver brings his respondeat superior claim against the City for the conduct of Officer Taylor pursuant to the New York State Constitution, the Court likewise recommends [that this] claim be dismissed because the Court recommends dismissing the underlying state law claims [for violation of the New York State Constitution as duplicative of the federal claims]."  (R&R (Dkt. No. 97) at 39 n.4)

In objecting to this recommendation, Plaintiff argues that while his "New York State Constitution claims against the individual defendants are subject to dismissal because Mr. Oliver has an alternative remedy under § 1983, the same principle does not apply to his New

York State Constitution claims against the City insofar as those claims are based on <u>respondeat</u>

<u>superior</u>[,] . . . [because] § 1983 is not an adequate alternative remedy for state-constitutional

claims that rely on a theory of <u>respondeat</u> <u>superior</u>.'" (Pltf. Objs. (Dkt. No. 103) at 12 (quoting

<u>Buari v. City of New York</u>, 530 F. Supp. 3d 356, 409 (S.D.N.Y. 2021))

The Court agrees with Plaintiff that the R&R overlooks <u>Buari</u> and other precedent

holding that <u>respondeat</u> <u>superior</u> claims against the City are not subject to dismissal on Section

1983 alternative remedy grounds. <u>See</u> <u>Buari</u>, 530 F. Supp. 3d at 409 (citing <u>Logan v. City of</u>

<u>Schenectady</u>, 1:18-cv-01179 (BKS/CFH), 2019 WL 3803631, at *9 (N.D.N.Y. Aug. 13, 2019)

(dismissing state constitutional claims against individual defendants because Section 1983

provided remedy but declining to dismiss those claims against the municipality); <u>Brown v. City</u>

<u>of New York</u>, No. 13-CV-6912, 2017 WL 1390678, at *15 (S.D.N.Y. Apr. 17, 2017) (dismissing

state constitutional claims against individual defendants but not municipality because claims

were asserted under <u>respondeat</u> <u>superior</u>); <u>Espinoza v. City of New York</u>, 194 F. Supp. 3d 203,

208 (E.D.N.Y. 2016) (same)).

Accordingly, Plaintiff's objection is sustained as to Plaintiff's <u>respondeat</u> <u>superior</u>

claim against the City in connection with alleged violations of the New York State Constitution.

The motion to dismiss that claim will be denied.

5. **Dismissal of Race Discrimination, Hostile Work Environment, and Retaliation Claims Against the DOE**

Judge Cott concludes that Oliver has adequately alleged the elements of race

discrimination, hostile work environment, and retaliation under Title VII, the NYSHRL, and the

NYCHRL, but nonetheless recommends – without discussion – that "the motion [to dismiss] be

granted as to [t]he various race discrimination, hostile work environment, and retaliation claims

against DOE." (R&R (Dkt. No. 97) at 78 (capitalization and list format altered); <u>see</u> <u>also</u> <u>id.</u> at

79)  Plaintiff objects to this recommendation, asserting that "the R&R fails to engage in any substantive discussion as to why [the Title VII, NYSHRL, and NYCHRL] claims against the DOE should be dismissed."  Plaintiff also points out that Defendants "did not move to dismiss those claims on any individualized basis."[7]  (Pltf. Objs. (Dkt. No. 103) at 15)

This Court concludes that the R&R's references to the dismissal of discrimination claims against the DOE are in error.

As discussed above, the R&R concludes that the SAC pleads <u>prima facie</u> claims of race discrimination, hostile work environment, and retaliation against Principal Estwick under Title VII, the NYSHRL, and the NYCHRL, given his personal involvement in the alleged discriminatory misconduct.  (R&R (Dkt. No. 97) at 73-74)  Judge Cott also recommends that the motion to dismiss the <u>Monell</u> claim against DOE be denied, finding that the SAC alleges that the DOE was on notice of a pattern of discriminatory conduct against Oliver but displayed a "consistent failure to investigate complaints" and "failed to supervise Estwick in his treatment of Oliver."  (<u>Id.</u> at 77)

Given that an employer such as DOE may be held vicariously liable under Title VII, the NYSHRL, and the NYCHRL for the acts of a supervisor such as Estwick, the motion to dismiss will be denied as to the discrimination, hostile work environment, and retaliation claims pled against DOE under these statutes.  <u>See</u> <u>Vance v. Ball State Univ.</u>, 570 U.S. 421, 429-30 (2013) (addressing Title VII claim; "even in the absence of negligence . . . an employer is vicariously liable 'when a supervisor takes a tangible employment action' . . . [or when] the

---

[7]  While Defendants argue that the SAC does not plead a <u>prima facie</u> case of race discrimination, hostile work environment, or retaliation under Title VII, the NYSHRL, and the NYCHRL, they do not discuss whether such violations – if adequately pled – may be imputed to the DOE.  (Def. Br. (Dkt. No. 63-5) at 28-39)

supervisor[] create[es] a hostile work environment [and] the employer is unable to establish an affirmative defense") (quoting <u>Burlington Indus., Inc. v. Ellerth</u>, 524 U.S. 742, 761-62 (1998)); <u>Alvarado v. Mount Pleasant Cottage Sch. Dist.</u>, 404 F. Supp. 3d 763, 787 (S.D.N.Y. 2019) (addressing Title VII claim; "[c]ourts in this circuit have generally agreed that an employer can be held vicariously liable for the retaliatory conduct of its supervisors"); <u>McCalla</u>, 2017 WL 3601182, at *44 ("[P]laintiffs establish liability against the City for their NYSHRL and NYCHRL claims by showing that the alleged discriminatory conduct was perpetrated by a supervisor."); <u>Dash v. Bd. of Educ. of City Sch. Dist. of New York</u>, 238 F. Supp. 3d 375, 392 (E.D.N.Y. 2017) (addressing Title VII claims; "[p]laintiff can impute the harasser's conduct to [the DOE], because the Principal had 'immediate (or successively higher) authority' over plaintiff") (quoting <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 807 (1998)); <u>Cameron v. New York City Dep't of Educ.</u>, No. 15-CV-9900 (KMW), 2018 WL 1027710, at *14 (S.D.N.Y. Feb. 21, 2018) (permitting Title VII and NYCHRL claims against DOE to proceed on the basis of principal's alleged actions); <u>United States v. New York City Dep't of Educ.</u>, 407 F. Supp. 3d 365, 394-95 (S.D.N.Y. 2018) (permitting Title VII, NYSHRL, and NYCHRL claims against DOE to proceed on the basis of principal's alleged actions).

None of the arguments Defendants make in opposing Plaintiff's objection are persuasive. Defendants first argue that the Court should reject the objection because Plaintiff has not made out a <u>prima facie</u> case of race discrimination, hostile work environment, or retaliation. (Def. Opp. to Objs. (Dkt. No. 109) at 15-18) This argument fails for reasons explained above. Defendants then argue that "[P]laintiff has failed to plead vicarious liability by DOE for the actions of Estwick." (<u>Id.</u> at 14) Defendants did not make this argument in their motion to dismiss papers, however, and "may not raise new arguments in response to objections to [the

magistrate judge's] R&R." Best v. Schneider, No. 12-CV-6142 NGG MDG, 2015 WL 5567062, at *24 n.26 (E.D.N.Y. Sept. 21, 2015).

Finally, Defendants argue that Plaintiff's objection does not encompass his NYSHRL and NYCHRL claims. (Def. Opp. to Objs. (Dkt. No. 109) at 14) But Plaintiff's objections explicitly state that "[t]he R&R erred in recommending that this Court dismiss the Title VII, NYSHRL, and NYCHRL claims against the DOE." (See Pltf. Objs. (Dkt. No. 103) at 13 (capitalization altered)) Moreover, Oliver's Title VII and NYSHRL race discrimination, hostile work environment, and retaliation claims are subject to the same standard,[8] see Pucino v.

---

[8] In August 2019, the NYSHRL was amended such that it "shall be construed liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of [the NYSHRL], have been so construed." N.Y. Exec. Law § 300. Accordingly, for claims that accrued after this amendment went into effect, see S. 6577, 242d Leg. § 16(d) (N.Y. 2019), "'the standard for [NYSHRL discrimination] claims [is] closer to the standard of the NYCHRL.'" Edelman v. NYU Langone Health Sys., No. 21 CIV. 502 (LGS), 2022 WL 4537972, at *14 (S.D.N.Y. Sept. 28, 2022) (alterations in original) (quoting Livingston v. City of New York, 563 F. Supp. 3d 201, 232 n.14 (S.D.N.Y. 2021)).

However, this amendment does not affect Oliver's NYSHRL claims. "[A] cause of action for discrimination under the NYSHRL accrues and the limitation period begins to run on the date of the alleged discriminatory act." Syeed v. Bloomberg L.P., 568 F. Supp. 3d 314, 321 (S.D.N.Y. 2021) (quoting Fair Hous. Just. Ctr., Inc. v. JDS Dev. LLC, 443 F. Supp. 3d 494, 504 (S.D.N.Y. 2020)) (brackets in Syeed). The date of the latest alleged discriminatory act in the SAC – and thus the latest date on which Oliver's claims may have accrued – is June 17, 2019, when Mustillo sent Oliver a disciplinary letter adopting anonymous allegations against him. (SAC (Dkt. No. 41) ¶ 131) Courts have concluded that the effective date of N.Y. Exec. Law § 300 is either August 12, 2019 (the signing date) or October 11, 2019 (the date other parts of the omnibus bill containing the amendment took effect). Compare McHenry v. Fox News Network, LLC, 510 F. Supp. 3d 51, 68 (S.D.N.Y. 2020) (citing S. 6577, 242d Leg. § 16 (N.Y. 2019)) ("The amendment took effect on the signing date, August 12, 2019, although other parts of the omnibus bill containing it took effect on October 11, 2019.") and Edelman, 2022 WL 4537972, at *14 (stating that the "effective date of" N.Y. Exec. Law § 300 is "August 12, 2019"), with Livingston, 563 F. Supp. 3d at 232 n.14 (citing Wellner v. Montefiore Med. Ctr., No. 17 Civ. 3479 (KPF), 2019 WL 4081898, at *5 n.4 (S.D.N.Y. Aug. 29, 2019)) ("These amendments were signed into law by then-Governor Andrew Cuomo on or about August 12, 2019. Significantly, however, these amendments only apply to claims that accrue on or after the effective date of October 11, 2019."). In sum, Oliver's discrimination and retaliation claims accrued before the

Verizon Wireless Commc'ns, Inc., 618 F.3d 112, 117 n.2 (2d Cir. 2010) ("We review
discrimination claims brought under the NYSHRL according to the same standards that we apply
to Title VII discrimination claims."); Lewis v. Roosevelt Island Operating Corp., 246 F. Supp. 3d
979, 989 n.5 (S.D.N.Y. 2017) ("The standard for hostile work environment claims under Title
VII . . . and the NYSHRL is the same."); Kraiem v. JonesTrading Institutional Servs. LLC, 571
F. Supp. 3d 53, 60 (S.D.N.Y. 2021) ("'The same standards govern retaliation claims under Title
VII and the NYSHRL.'") (quoting McHenry v. Fox News Network, LLC, 510 F. Supp. 3d 51, 66
(S.D.N.Y. 2020)), and NYCHRL race discrimination, hostile work environment and retaliation
claims are subject to a more lenient standard.  See Mihalik v. Credit Agricole Cheuvreux N.
Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013) ("[C]ourts must . . . constru[e] the NYCHRL's
provisions 'broadly in favor of discrimination plaintiffs, to the extent that such a construction is
reasonably possible.'") (quoting Albunio v. City of New York, 16 N.Y.3d 472, 477-78 (2011));
Lewis, 246 F. Supp. 3d at 989 n.5 ("The same provision of the NYCHRL governs claims for
discrimination and hostile work environment, and entails a more liberal standard than Title
VII."); Kraiem, 571 F. Supp. 3d at 60 ("Retaliation claims under the NYCHRL . . . are subject to
a broader standard than under the NYSHRL and Title VII.") (quotation omitted)  Accordingly, if
a race discrimination, hostile work environment, or retaliation claim is adequately pled under
Title VII, it is likewise adequately pled under the NYSHRL and the NYCHRL.  See Clarke v.
New York City Dep't of Educ., No. 18CV1850NGGJO, 2020 WL 6047426, at *8 (E.D.N.Y.
Oct. 13, 2020) ("Likewise, Ms. Clarke's claims of discrimination under NYSHRL, which is
coextensive with Title VII, and NYCHRL, which is less stringent than Title VII, must advance to

---

change to the NYSHRL.  Accordingly, his NYSHRL claims and his Title VII claims are subject
to the same standard.

trial."); <u>Mihalik</u>, 715 F.3d at 109 (stating that the NYCHRL "created a 'one-way ratchet,' by

which interpretations of state and federal civil rights statutes can serve only '"as a floor below

which the City's Human Rights law cannot fall"'") (quoting <u>Loeffler v. Staten Island Univ.</u>

<u>Hosp.</u>, 582 F.3d 268, 278 (2d Cir. 2009) (in turn quoting N.Y.C. Local L. No. 85 of 2005 § 1).

      Accordingly, to the extent that the R&R recommends that Plaintiff's Title VII,

NYSHRL, and NYCHRL claims against the DOE be dismissed, Plaintiff's objection is

sustained. Defendants' motion to dismiss will be denied as to those claims.

### 6. Dismissal of Race Discrimination, Hostile Work Environment, Retaliation, and Supervisory Liability Claims Against Chan and Mustillo

      While Judge Cott concludes that the SAC pleads a <u>prima facie</u> case of race

discrimination, hostile work environment, and retaliation, he finds that it does not sufficiently

allege the personal involvement of Defendants Chan and Mustillo.

      In the R&R, Judge Cott notes that

> a supervisor's personal involvement may be demonstrated by a plaintiff in four different ways:

> "(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference . . . by failing to act on information indicating that unconstitutional acts were occurring."

(R&R (Dkt. No. 97) at 71 (quoting <u>Littlejohn</u>, 795 F.3d at 314) (further quotation omitted))[9]

_____

[9] The R&R analyzes "the discrimination, hostile work environment, and retaliation claims under Section 1983 and NYSHRL against . . . Chan, and Mustillo" but does not separately address those claims for purposes of the NYCHRL. (<u>Compare</u> R&R (Dkt. No. 97) at 74 ("Accordingly, the motion to dismiss the discrimination, hostile work environment, and retaliation claims under Section 1983 and NYSHRL against . . . Chan, and Mustillo should be granted. . . ."), <u>with id.</u> at

As to Chan's direct and supervisory liability, Judge Cott finds that

> Oliver's claims against Chan, even though alleged against her in her official
> capacity, are not sufficient to demonstrate personal involvement.  Oliver pleads
> no facts in the Second Amended Complaint referring to Chan's involvement in
> any of the actions giving rise to his discrimination and retaliation claims.  He
> alleges only in a conclusory manner that Chan was "aware of the discrimination"
> Oliver suffered, but "did nothing to prevent" Estwick or the school from engaging
> in further discrimination.  (SAC (Dkt. No. 41) ¶ 72)  Oliver then states that Chan
> was one of the individuals who met with G.C.'s parents at [the School on] the
> morning of March 22, 2019 following the incident and claims that the NYPD
> decided to arrest him with Chan's "encouragement," although he fails to allege
> any factual basis for this assertion.  (SAC (Dkt. No. 41) ¶ 78)  Even drawing all
> reasonable inferences in Oliver's favor as required at this stage of the case, the
> only constitutional deprivation with which Chan is remotely involved as pled in
> the Second Amended Complaint is Oliver's purported false arrest, which was
> allegedly committed by the NYPD and not by Chan, her subordinates, or anyone
> beholden to an alleged policy she created or allowed to continue.  (See SAC (Dkt.
> No. 41) ¶¶ 77-80)

(R&R (Dkt. No. 97) at 72 (citation format altered))

As to Mustillo's direct and supervisory liability, Judge Cott notes that the SAC

alleges that she was

> involved in the investigation and disciplinary actions that followed Oliver's return
> to TSMS after he was sent to the Rubber Room in 2019.  (SAC ¶ 121)  Oliver met
> with her on June 11, 2019, at which time she gave him a copy of an investigative
> report regarding G.C.'s accusations against him.  (SAC ¶ 122)  Oliver claims
> Mustillo found credible what he deems to be "false accusations" with no evidence

---

78 ("[T]he Court recommends that the motion be granted as to . . . [t]he various Race
Discrimination, Hostile Work Environment, and Retaliation Claims against . . . Chan [and]
Mustillo . . . (Eighth through Thirteenth, and Sixteenth through Twenty-First Claims)."); see
SAC (Dkt. No. 41) ¶¶ 253-73 (Plaintiff's Nineteenth, Twentieth, and Twenty-First Causes of
Action, asserting claims under the NYCHRL against Chan and Mustillo, among others))

Plaintiff does not object to this omission, however, and Courts have consistently held that the
NYCHRL – like Section 1983 and the NYSHRL – has a personal involvement requirement for
the direct liability of supervisors.  See Foster, 2021 WL 4461163, at *1 (citing Feingold as
"setting forth an actual participation standard for individual liability under the NYSHRL
and NYCHRL"); Williams, 2021 WL 2077817, at *12 (stating that the personal involvement
standard set out in Littlejohn applies to "NYCHRL claims") (citing Britt, 2011 WL 4000992, at
*11).  Given these circumstances, the Court construes the R&R's analysis as to Chan and
Mustillo as addressing Plaintiff's claims under Section 1983, the NYSHRL, and the NYCHRL.

in the report.  (SAC ¶ 126)  According to Oliver, the accusations are false because
he denied them and because those who conducted the investigation interviewed
other students all at one time rather than individually.  (SAC ¶¶ 126-29)  On these
facts, Oliver asserts that Mustillo adopted as true the accusations in her June 17,
2019 disciplinary letter to him "based on a racist view of Black men as
predators."  (SAC ¶¶ 131–32)  However, Oliver has alleged no facts leading to
this conclusion.

(Id. at 72-73 (citation format altered))

As to supervisory liability for violations of federal law, Judge Cott notes that

"'supervisors cannot be held liable based solely on the alleged misconduct of their

subordinates.'"  (Id. at 74 (quoting Vasquez, 2017 WL 946306, at *11) (further quotation

omitted))  Having found that the SAC does not sufficiently allege Chan and Mustillo's personal

involvement, Judge Cott recommends that "the motion to dismiss supervisory liability claims

against Chan and Mustillo . . . on federal law grounds should be granted."  (Id. at 75)

In his objections, Oliver asserts that the SAC contains sufficient allegations as to

both Chan and Mustillo.  As to Chan, Oliver points to the SAC's allegation that she "oversees

hiring, supervising, and development of principals, as well as teacher promotion decisions for

District 1 schools . . . . [and] also is responsible for implementing policies, practices and

trainings related to teacher conduct and student treatment within District 1 and oversees District

1's response to any reports of suspected abuse of District 1 students."  (SAC (Dkt. No. 41) ¶ 41;

see Pltf. Objs. (Dkt. No. 103) at 16-17)  Oliver also argues that "the SAC alleges that Chan was

personally involved in Mr. Oliver's arrest, specifically providing a ruse to lure Mr. Oliver out of

his classroom to her office in order to be placed under arrest."  (Pltf. Objs. (Dkt. No. 103) at 18

(emphasis in original); see SAC (Dkt. No. 41) ¶¶ 78-79 ("On the morning of March 22, 2019,

Defendants Chan and Estwick, other [School] staff, and one of G.C.'s parents met at [the

School].  Without investigating the incident, and without any evidence that Mr. Oliver posed any

immediate threat, the NYPD, with Defendants DOE, Chan and Estwick's encouragement,

decided to arrest Mr. Oliver.  Thereafter, Defendant Estwick interrupted Mr. Oliver's classroom

lesson and removed him from the classroom under the false pretense that Defendant Chan

wanted to see Mr. Oliver in her office.") (numbering omitted))

As to Mustillo, Oliver argues that the SAC alleges that she "is the Deputy

Superintendent of District 1 schools, and as such, on information and belief, 'is responsible for

assisting [] Chan in implementing policies, practices and trainings related to teacher conduct . . .

and overseeing District 1's response to any reports of suspected abuse of District 1 students.'"

(Pltf. Objs. (Dkt. No. 103) at 17 (quoting SAC (Dkt. No. 41) ¶ 42))  Oliver also argues that "the

R&R discards the SAC's allegations that Mustillo adopted as true false statements in an

investigative report she apparently created 'based on a racist view of Black men as predators'

and then used that Report to draft a disciplinary letter placed in Mr. Oliver's personnel file."

(Pltf. Objs. (Dkt. No. 103) at 18 (quoting R&R (Dkt. No. 97) at 73) (in turn quoting SAC (Dkt.

No. 41) ¶¶ 131-32))  Oliver cites the SAC's allegations that "the investigation was conducted

over two months after the incident at issue and over two months after the NYPD had concluded

its own investigation . . . [and] inexplicably came to a conclusion that was in direct contradiction

to that reached by the NYPD"; that Mustillo's report "includes statements by anonymous TSMS

students that Mr. Oliver refuted and which were not corroborated"; and that Mustillo's "[r]eport

and [l]etter were both motivated by retaliation for Mr. Oliver's prior actions against the DOE and

other DOE Defendants."  (Pltf. Objs. (Dkt. No. 103) at 18 (citing SAC (Dkt. No. 41) ¶¶ 21, 125-

26, 132))

Finally, Oliver points to the SAC's allegations "that Chan and Mustillo 'were

aware of the discrimination which Mr. Oliver suffered' – discrimination that the R&R found was

sufficiently alleged – and 'they did nothing to prevent [] Estwick or the rest of the TSMS and

District 1 staff from again engaging in instances of discrimination and retaliation against Mr. Oliver.'" Oliver further notes that the SAC pleads that "Chan and Mustillo [held] positions in which they were responsible for protecting Mr. Oliver [and] also were on notice that Mr. Oliver had been the victim of discrimination and were required to protect Mr. Oliver from ongoing illegal treatment." (Pltf. Objs. (Dkt. No. 103) at 17 (quoting SAC (Dkt. No. 41) ¶ 72))

Having conducted a <u>de novo</u> review of the SAC's allegations regarding Chan and Mustillo, this Court concludes that Oliver's allegations regarding Chan and Mustillo are conclusory and lack sufficient factual detail to survive a motion to dismiss. For substantially the same reasons explained in the R&R, Plaintiff's direct and supervisory claims against Chan and Mustillo will be dismissed.

## <u>CONCLUSION</u>

For the reasons stated above, the R&R is adopted in part, and Defendants' motion to dismiss is granted in part and denied in part.  The Clerk of Court is directed to terminate the motion (Dkt. No. 63).

Dated: New York, New York
       February 22, 2023

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge